IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD KITCHEN,              )
                             )
        Plaintiff,           )
                             )    Case No. 10 C 4093
        v.                   )
                             )    The Hon. Elaine Bucklo
JON BURGE, et al.,           )
                             )
        Defendants.          )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff Ronald Kitchen, by his undersigned attorneys, responds as follows to

Defendants' Motion for Entry of a Protective Order.

### INTRODUCTION

Plaintiff objects to Defendants' Proposed Protective Order because it seeks to shield from

public view the disciplinary records of Chicago Police Officers who are accused of engaging in a

pattern and practice of torture. The specific materials that Defendants seek to designate

confidential are decades old disciplinary records,[1] commonly known as Complaint Register

("CR") files, of the individual defendant officers and certain other police officers who have been

implicated in the scandal involving disgraced former Chicago Police Commander Jon Burge.

Plaintiff specifically objects to several provisions of Defendants' Proposed Order. *First,*

in proposed section A(6), Defendants ask this Court to find good cause to keep confidential the

disciplinary records and CR files where no discipline has been imposed. In requesting that this

---

[1] For example, the two lead police defendants, Jon Burge and Michael Kill, left the Chicago Police Department in 1991 and 1994, respectively.

information be held confidential, Defendants have misapplied the related statutes, the available legislative history, and the relevant case law. *Second*, in section C(8)(b), Defendants have proposed burdensome, time consuming, and unnecessary procedures for handling information that is *not* confidential under their proposed order. Plaintiff is concerned that the proposed procedures, which involve 30 day review periods and *in camera* review, will be used to delay the discovery process and frustrate Plaintiff's ability to timely litigate the case. *Third*, in section C(3) Defendants seek return of the confidential documents within 60 days of resolution of the case, and in section C(1) to prevent dissemination of the documents to, or use by, lawyers litigating similar cases. The City has not and cannot demonstrate that these provisions are necessary, and their inclusion would only serve to deprive criminal defendants and civil plaintiffs in other similar cases of relevant information.

Defendants' protective order, as proposed, will unnecessarily complicate this litigation and tax judicial resources. Defendants' attempt to shield relevant disciplinary records is against the public interest. Rather than promoting transparency and ensuring good governance, Defendants' proposed order serves the narrow self-interest of a public agency that would like to hide its process in order to shield from public view the misconduct of a few public servants.

In this case, in which there is a strong public interest in access to information, the Court should deny the Defendants' proposed protective order, and instead allow the CR files at issue to be free from public restriction as Judge Castillo held in *Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997). The plaintiff in *Wiggins*, like Plaintiff Kitchen, alleged that he was electrically shocked and abused by Defendants Burge, Kill and other detectives at Area 3 police headquarters. Judge Castillo denied the Defendants attempt to bar public access to CRs, quoting

the words of Martin Luther King Jr. in his letter from the Birmingham County Jail in April of

1963:

> "Like a boil that can never be cured as long as it is covered up but
> must be opened with all its pus-flowing ugliness to the natural
> medicines of air and light, injustice must likewise be exposed, with
> all of the tension its exposing creates, to the light of human
> conscience and the air of national opinion before it can be cured."

> [T]his Court concludes that the allegations of police misconduct contained in the
> disputed files must be exposed to the light of human conscience and the air of
> natural opinion.

*Wiggins*, 173 F.R.D. at 230.

Plaintiff does agree that the following categories of documents should be designated

confidential: (1) medical records and other personal health information from both party and non-

party witnesses; and (2) personal identifying information—including social security numbers,

home addresses, telephone numbers, financial information, driver's license and employee

numbers—of both parties and non-party witnesses. Plaintiff has therefore proposed an

alternative protective order, attached hereto as Exhibit A, which defines "Confidential Matter"

and "PHI" to include this information. *See* Plaintiff's Proposed Protective Order at A(6).

## ARGUMENT

## I. DEFENSE COUNSEL MISUSE PROTECTIVE ORDERS TO OBSTRUCT THE DISCOVERY PROCESS.

Counsel for the police defendants, who are funded by the City of Chicago, have filed their

motion under the false pretext of "protecting defendant Parker [sic], non-party officers, and non-

party complainants identified in the CRs from annoyance, embarrassment, and/or oppression."

Defs' Motion at 3. In practice, however, defense counsel in this and other police torture cases

3

use the protective orders to obstruct, delay, and otherwise impede the discovery process.

For example, during last week's deposition of Defendant Kill, defense counsel in this case attempted to bar the questioning of Defendant Kill about a deposition that he gave in the consolidated cases of *Hobley v. Burge*, No. 03 C 3678 (N.D. Ill.), *Patterson v. Burge,* No. 03 C 4433 (N.D. Ill) and *Orange v. Burge,* No. 04 C 168 (N.D. Ill.), because the deposition was subject to a protective order entered by Magistrate Soat-Brown in 2005. *See* 5/25/11 Transcript of Kill Deposition, attached hereto as Exhibit B (filed separately under seal). In response to defense counsel's objections, Plaintiff's counsel voluntarily placed all questions concerning these consolidated cases under seal so that the deposition could proceed. *Id.* at 55. Unsuccessful in stopping the limited questioning, counsel for the City has now again accused Plaintiff's counsel of violating the Magistrate Soat-Brown protective order.

Another recent example of defense counsel's misuse of protective orders occurred in a different pending police torture case, *Cannon v. Burge*, No. 05 C 2192 (N.D. Ill.), in which defense counsel delayed the filing of plaintiff Cannon's response to summary judgment for weeks by claiming that certain CR files that the plaintiff had attached as exhibits to his statement of additional facts might be confidential pursuant to various protective orders filed in previous cases. These arguments were specious at best since defense counsel were specifically informed that the CRs at issue were made available to the public decades earlier, including by Judge Castillo's decision in *Wiggins*. But, as they routinely do, the City-funded lawyers attempted to argue the CRs should be filed under seal and prevented from disclosure. Defense counsel eventually conceded and Judge St. Eve ultimately ruled that the CRs were not confidential and could be publicly filed, but only after considerable time and resources were expended litigating

4

the issue. *See* Plaintiff Darrell Cannon's Motion to File Certain Public Exhibits in Open Court

and 4/15/11 Minute Order of Judge St. Eve, both attached as Group Exhibit C.

Arming defense counsel with the type of highly restrictive protective order they seek in

this case will allow them to continue their officially funded campaign to obstruct and delay the

litigation of this and other related torture cases.

## II.   GOOD CAUSE DOES NOT EXIST TO KEEP CR FILES AND DISCIPLINARY RECORDS CONFIDENTIAL

### A.   Legal Standard

"In deciding whether there is good cause for a protective order, [this Court] must balance

the interests involved: 'the harm to the party seeking the protective order and the importance of

the disclosure to the public.'" *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001) (Castillo, J.)

(quoting *Wiggins*, 173 F.R.D. at 230). To establish good cause, Defendants must first make "a

particular and specific demonstration of fact, as distinguished from stereotyped and conclusory

statements." *Gulf Oil Co. v. Bernard*, 453 U.S. 89, 102 n.16 (1981). They must show that public

use of the CR files "will result in a 'clearly defined and very serious injury.'" *Andrew Corp. v.

Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Keys, M.J.) (citation omitted). Thus, courts have

held that parties seeking a protective order maintain the "heavy burden of showing 'extraordinary

circumstances' based on 'specific facts.'" *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998)

(quoting *Prozina Shipping Co. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass 1988)).

Defendants have failed to meet this threshold requirement.

The public policy of the Illinois Freedom of Information Act (FOIA) favors disclosure of

all documents relating to the affairs of public officials, including allegations of police

misconduct. Section 1 of FOIA states:

> Pursuant to the fundamental philosophy of the American constitutional form of
> government, it is declared to be the public policy of the State of Illinois that all
> persons are entitled to full and complete information regarding the affairs of
> government and the official acts and policies of those who represent them as
> public officials and public employees consistent with the terms of this Act. Such
> access is necessary to enable the people to fulfill their duties of discussing public
> issues fully and freely, making informed political judgments and monitoring
> government to ensure that it is being conducted in the public interest.
>
> *The General Assembly hereby declares that it is the public policy of the State of
> Illinois that access by all persons to public records promotes the transparency
> and accountability of public bodies at all levels of government.* It is a
> fundamental obligation of government to operate openly and provide public
> records as expediently and efficiently as possible in compliance with this Act.

5 ILCS 140/1 (emphasis added).

The Chicago Police Department is a public institution and these CR files demonstrate the

manner in which allegations of police abuses and corruption are investigated by the City officials

charged with that task. By their nature, these files belong to the public. Defendants cannot

provide an example of a "clearly defined and serious injury" that will arise from the public

disclosure of decades old documents that could outweigh the overriding presumption of public

openness. As Judge Castillo explained in *Wiggins*:

> [L]awsuits are filed against police officers every day and are a matter of public
> record. The allegations contained in these lawsuits may or may not be true. The
> general public is sophisticated enough to understand that a mere allegation of
> police torture, just like a lawsuit, does not constitute actual proof of misconduct.
> While it is true that the requested information concerns the internal investigative
> processes of the police department, there is an important public interest at stake—
> the health and welfare of the general public and the integrity of the police
> department. The public has a right to know how matters concerning their daily
> protection are being investigated and handled. If it were not for this type of public
> information, allegations of police torture might go unnoticed—seriously
> jeopardizing the safety of the community at large. In essence, this Court
> concludes that the allegations of police misconduct in the [CR files] before the

Court must receive public exposure in order to insure that the significant public
interest is served.

173 F.R.D. at 230.

More recently, Judge Lefkow observed, "[w]ithout such information, the public would be
unable to supervise the individuals and institutions it has entrusted with the extraordinary
authority to arrest and detain persons against their will. With so much at stake defendants simply
cannot be permitted to operate in secrecy." *Bond v. Utreras*, 2007 U.S. Dist. LEXIS 48914, *11-
12 (N.D. Ill. July 2, 2007), *reversed on other grounds,* 585 F.3d 1061 (7th Cir. 2009); *see also
Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do
not demand infallibility from their institutions, but it is difficult for them to accept what they are
prohibited from observing."). Courts in this district have consistently considered the public
interest to be a deciding factor in finding there to be 'good cause' to publish complaint and
disciplinary files in civil rights police misconduct suits. *See, e.g., Rangel v. City of Chicago*,
2010 U.S. Dist. LEXIS 94989, *4-5 (N.D. Ill. Sept. 13, 2010) (Lefkow, J.); *Coffie v. City of
Chicago*, 2006 U.S. Dist. LEXIS 22061, *9 (N.D. Ill. Apr. 21, 2006) (Nolan, M.J.) ("The public
certainly has a valid interest in knowing more about allegations of police misconduct."); *McGee
v. City of Chicago*, 2005 U.S. Dist. LEXIS 30925, *13 (N.D. Ill. June 23, 2005) (Nolan, M.J.)
("This Court believes that the effectiveness of the Chicago Police Department's internal
investigations is strengthened by public review of C.R. files produced in civil rights litigation.");
*Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 715 (N.D. Ill. 2002) (Castillo, J.) ("This
Court's views on the need to publicly air, debate, review and eliminate police misconduct are
well established."); *Marsalis*, 202 F.R.D. at 239 ("Court related documents are presumed to be

matters within the public domain, especially when they concern matters of general concern to the workings of our democratic society. Police misconduct certainly meets this standard."); *Doe v. White*, 2001 U.S. Dist. LEXIS 7726, *5 (N.D. Ill. June 7, 2001) (Lefkow, J.) ("[T]he policy favor[s] the public's right to be informed of the conduct of public servants."); *Wiggins*, 173 F.R.D. at 230 ("[W]e conclude that public interest far outweighs any harm to the police officers and thus, there is no good cause to keep the documents confidential," and "[t]he public has a right to know whether allegations of police [misconduct] are appropriately investigated and resolved by the City of Chicago.")

The presumption against a protective order is especially strong here because police officers, as public officials, have no right of privacy in the performance of their official duties. *See Cassidy v. American Broadcasting Companies, Inc.*, 60 Ill.App.3d 831, 839 (1978) ("[T]he conduct of a policeman on duty is legitimately and necessarily an area upon which public interest may and should be focused."); *In re A Witness Before the Special Grand Jury*, 288 F.3d 289, 294 (7th Cir. 2002) ("Public officials are not the same as private citizens precisely because the exercise the power of the state.").

Plaintiff's proposed protective order satisfies the legitimate privacy interests of the defendant police officers by redacting all personal identifying information from the CR files. Thus, in light of the public interest at stake here, any counter-argument Defendants might make concerning an amorphous potential harm stemming from the disclosure of these files must be rejected: "[T]he fact that the C.R. files contain allegations, and maybe even false ones, does not provide a legitimate basis for keeping these documents confidential." *McGee*, 2005 U.S. Dist. LEXIS 30925 at *10-11.

8

**B.    The Complaint Register Files Are Not Protected Under the 2010 Illinois Freedom of Information Act**

Defendants argue that CR files are not publicly available under the 2010 FOIA statute. This argument must fail. FOIA exempts from disclosure all "[r]ecords relating to a public body's *adjudication* of employee grievances or disciplinary cases." 5 ILCS 140/7(1)(n) (emphasis added). CR files, in contrast, are the result of investigations conducted by the Office of Professional Standards (OPS), Internal Affairs Division (IAD), and the Independent Police Review Authority (IPRA)—all police bodies that do not conduct adjudications. Rather, adjudicatory responsibility lies solely with the superintendent and the Police Board. As the Chicago Police Board's own policies explain,

> The Independent Police Review Authority (IPRA), the Police Department, and the Police Board have different roles. The responsibility to receive complaints rests with IPRA. Depending on the nature of the allegations, either IPRA or the Police Department will investigate the complaint. The Police Board's role is to [adjudicate] those disciplinary matters that are filed with the Board.[2]

In addition, the Police Board's Rules of Procedure states: "Proceedings against an employee shall be commenced by the filing of written charges with the Police Board by the Superintendent of Police."[3] Thus, CR files, which are the province of investigative and not adjudicatory bodies, do not fall under the FOIA exemption.

The Illinois Judiciary has explicitly recognized as much. The appellate court in *Gekas v. Williamson*, 912 N.E.2d 347 (Ill. App. Ct. 2009) explained:

---

[2] The Chicago Police Board's publication, "Allegations of Police Misconduct: A Guide to the Complaint and Disciplinary Process" (July 2010) is available at http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/AllegMiscond201007.pdf.

[3] The Chicago Police Board's Rules of Procedures (November 2009) are available at http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure20091119.pdf

> Unlike a performance evaluation, the [police department]'s records are not generated for [the officer]'s personal use, and they do not concern his personal affairs. What he does in his capacity as a [police officer] is not his private business. Whether he . . . committed misconduct during an investigation or arrest is not his private business. Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave. Not every scrap of paper that enters a personnel file necessarily is personal information.

*Id.* at 356.[4]

Similarly, courts in the Northern District of Illinois have repeatedly held that CR files are not exempt from disclosure under FOIA. *See Rangel*, 2010 U.S. Dist. LEXIS 94989 at *11; *Parra v. City of Chicago*, No. 09 C 4067, slip op. (N.D. Ill. April 14, 2010) (Cox, MJ); *Macias v. City of Chicago*, No. 09 C 1240, slip op. (N.D. Ill. Mar. 10, 2010) (Valdez, MJ).[5]

In a recent ruling denying a motion for reconsideration after striking down a provision identical to A(6) in Defendants' proposed order, Judge Schenkier made a compelling analogy between the IPRA/OPS investigations that end without adjudication and the purely investigatory

---

[4] The recent amendments to section 7 of FOIA did not overrule or undermine *Gekas'* holding. The *Gekas* decision was announced on July 20, 2009, almost one month before the amendments to FOIA were passed on August 17, 2009 in Public Act 96 542, becoming effective January 1, 2010. If the legislature wished to overrule *Gekas*, it could have done so in a clear and readily apparent manner, as courts in this district have recognized. *See Rangel*, 2010 U.S. Dist. LEXIS 94989 ("[T]here is no basis to conclude that this amendment, enacted approximately one month after *Gekas* was decided, was an effort to broaden the scope of the adjudication exemption for public employees, and certainly not to exempt CR register documents."); *see also Vasquez v. City of Chicago*, No. 09 C 4529, attached as Exhibit D at 6-7 ("That bill [2010 FOIA amendments] was first introduced in February of 2009. And I think more important for our purposes, the very significant amendments to the exemptions under FOIA, under 140/7(1), those were actually first marked up in the bill in May of 2009. So we're talking about these proposed amendments actually were in the bill prior to *Gekas*. And given the overall very extensive changes in the Freedom of Information Act exemptions that this bill created, and given that they were introduced into the legislation prior to *Gekas*, it is difficult for me to ascribe to the legislature a motive in the legislation of overruling *Gekas*.")

[5] The decisions in *Parra v. City of Chicago* and *Macias v. City of Chicago* are attached hereto as Group Exhibit E.

function of the Equal Employment Opportunity Commission (EEOC) in employment disputes:

> Let's say that somebody is fired and they have a claim that they wish to file that
> [their] termination violates Title VII. As a prerequisite to going into federal court,
> you have to file a charge with the EEOC. The EEOC does not adjudicate charges.
> The EEOC will investigate, will often try to mediate. And at the end of an EEOC
> process, whether it is terminated by the issuance of a right to sue letter or a finding
> of substantial evidence or a finding of no substantial evidence, the EEOC mission
> is over. That is not an adjudication. The person may then go to federal court, may
> not go to federal court. If the matter never progresses beyond that EEOC
> investigative phase, I would be hard pressed to conclude that what happened at the
> EEOC was related to an adjudication because there never was an adjudication.

*Vasquez v. City of Chicago*, No. 09 C 4529 (N.D. Ill.), 5/12/2010 Motion Hearing Transcript

attached hereto as Exhibit D, pp. 4-5 (emphasis added).

Similarly, OPS, IPRA, and IAD do not have the authority to issue or adjudicate

disciplinary action to Chicago police officers. Like the EEOC, these bodies can issue a

recommendation but only the Police Board or the Superintendent of Police can adjudicate the

matter and impose any punishment. *See* Group Ex. E, *Parra v. City of Chicago*, No. 09 C 4067,

slip op. (N.D. Ill. April 14, 2010) and *Macias v. City of Chicago*, No. 09 C 1240, slip op. (N.D.

Ill. Mar. 10, 2010) (applying similar rationale).

In sum, the OPS, IPRA or IAD investigations that result in CR files do not fall within the

Illinois FOIA exemption, and thus, these files remain subject to disclosure.

### C.     820 ILCS 40/0.01 of the Illinois Personnel Records Review Act Does Not Support Defendants' Proposed Order

In section A(6) of their proposed protective order, Defendants cite the Illinois Personnel

Records Review Act, 820 ILCS 40/0.01, to support their proposed standard of confidentiality.

The Act requires employers to submit written notice to their employees before releasing "a

disciplinary report, letter of reprimand, or other disciplinary action to a third party." 820 ILCS

11

40/7. It clearly "does not prohibit the disclosure of the disputed documents; rather it merely prescribes the procedures the [Chicago Police Department], as the defendant officers' employer, must follow before disclosing them." *Bond*, 2007 U.S. Dist. LEXIS 48914, *13.

**D.     The 2010 Amendments to the Illinois FOIA Statute Place the Burden of Non-Disclosure on the Government**

In 2010, the Illinois legislature codified the presumption that public records are open to the public. *See* 5 ILCS 140/1.2 ("All records in the custody or possession of a public body are presumed to be open to inspection or copying."). Prior to the 2010 amendments, FOIA had placed the burden of overcoming an exemption on the party seeking disclosure of the documents. The 2010 amendments constituted a complete reversal. The law now reads that "[a]ny public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." *See* 5 ILCS 140/1.2.

When interpreting a statute, a court's "sole objective is to ascertain and give effect to the legislature's intent." *Gekas*, 912 N.E.2d at 353. A court would be hard-pressed to find more conclusive evidence of the legislature's intent to promote a presumption of full disclosure than by examining the text of the amendments to the FOIA statute and giving the words their plain and ordinary meaning. *Id.* As Defendants have offered *no* showing of exemption, much less by clear and convincing evidence, the officer CR files should be disclosed.

**E.     State Law is Not Dispositive in a Federal Rule 26(c) Good Cause Analysis**

Moreover, Defendants' emphasis on the Illinois law governing disclosure is misplaced. Federal law controls discovery in federal civil actions. *See Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) ("State-law

privileges are not 'legally applicable' in federal-question cases."); *Lepianka v. Vill. of Franklin Park*, 2004 U.S. Dist. LEXIS 5013, *5 (N.D. Ill. Mar. 25, 2004) (Nolan, M.J.) ("The Illinois FOIA governs disclosure to the public in general and is not dispositive of disclosure in response to discovery requests in litigation."). This Court must evaluate whether Defendants have met their burden of showing *good cause* to shield decades old information from public scrutiny, in accordance with Rule 26(c) of the Federal Rules of Civil Procedure. And as Plaintiff has shown above, Defendants clearly cannot meet this standard.

## II.    SECTION C(8)(B) OF DEFENDANTS' PROPOSED ORDER IS BOTH UNNECESSARY AND UNREASONABLE.

Section C(8)(b) of Defendants' proposed protective order applies to documents relating to cases of police misconduct in which the City has imposed discipline. These files are *not* confidential even under the terms of Defendants' Proposed Protective Order. *See* Defendants' Proposed Order, Section A(6) (defining confidential matter). Defendants' proposed section C(8)(b) restricts use of non-confidential documents by requiring that Plaintiff give Defendants a thirty day review period before publicly using the documents or information therein, which includes court filings and depositions. Further, if Defendants object to the use of these documents, the Court is *required* under the section to conduct an *in camera* review.

Defendants have not shown "good cause" for restricting these documents, as required by Local Rule 26.2(b) and Federal Rule of Civil Procedure 26(c). On a more practical level, and with an eye towards expediency, there are many problems with the proposed section. The requirement of *in camera* review by this Court could entail an unnecessary and time consuming expenditure of judicial resources, particularly considering that the relevant documents are not

even confidential by the terms of Defendants' proposed order. This requirement is especially burdensome considering portions of depositions might have to be preemptively and improperly placed under seal while these proceedings are conducted.

In addition, Section C(8)(b) violates the spirit, if not the letter, of the Local Rules regarding the filing of sealed documents. In order to file or use non-confidential documents that are the subject of Section C(8)(b), Plaintiff would have to run through a gauntlet of requirements, which contradict the Local Rules. Besides the added expense and time required for filing documents under seal, Local Rule 5.8 only allows such filings pursuant to court order. Since the documents referred to in Section C(8)(b) are by their definition not confidential materials, the proposed order would not provide the authority under the Local Rules for Plaintiff to file them under seal. Thus, Plaintiff would have to file a motion with the Court and an *in camera* review would follow. Only after such a determination, which may include response and reply briefs, could Plaintiff file any motion containing the non-privileged documents or information gleaned from them. This process would double the time needed to resolve simple discovery motions.

Parties do not have carte blanche to file documents under seal or to seal depositions at will: "The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected . . ." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Furthermore, a judge may not rubber stamp a stipulation to seal the record. *In re Krynicki*, 983 F.2d 74 (7th Cir. 1992). The motion for a protective order provides no basis for the cumbersome Section C(8)(b) requirements, and Defendants have not demonstrated good cause for treating non-confidential materials as restricted documents, under Local Rules 26.2(b) and Federal Rule of Civil Procedure 26(c).

14

III. **ALTERNATIVELY, THE OVERRESTRICTIVE LIMITATIONS ON DISSEMINATION AND RETENTION OF "CONFIDENTIAL MATTER" CONTAINED IN DEFENDANTS' PROPOSED ORDER SHOULD BE STRICKEN**

Finally, even if the Court were to hold that there is good cause for deeming the decades old CRs in question "confidential," it should nonetheless permit dissemination under the protective order to other counsel litigating similar cases, and correspondingly strike the return provision contained in section C(3). *See, e.g.*, Protective Orders entered by Judge Coar in *Santiago v. City of Chicago*, No. 97 C 2775 (N.D. Ill) (section 4(g-i)) and Judge Shadur in *Fallon v. City of Chicago*, No. 90 C 6722 (N.D. Ill.) (section 8(g-i)), attached hereto as Group Exhibit F. With regard to dissemination, providing access to an attorney representing a criminal defendant or civil plaintiff alleged to have been abused by the defendant officers gives the attorney the opportunity to discover specific, concrete information relevant to their case, an opportunity which has previously aided criminal defendants in other cases in which Plaintiff's counsel have been involved. Additionally, Defendants' insistence that Plaintiff's counsel must return discovery documents at the end of this case is unnecessary and unreasonable as retention of similar discovery materials by Plaintiff's counsel has been the practice in most of the previous § 1983 cases litigated by them over the past 20 years.[6] Moreover, the City has not and cannot demonstrate any harm previously incurred from Plaintiff's counsel's retention of similar documents and cannot justify its assertion that the return of the documents is, in fact, necessary.

---

[6] *Fallon v. City of Chicago*, 90 C 6722, *Hardeway and Hights v. City of Chicago*, 91 C 41; *Pena v. City of Chicago*, 91 C 2535; *Fuentes v. City of Chicago*, 92 C 1871; *Seaton v. Kato*, 94 C 9651; *Tripplett v. Shields*, 97 C 4026; *Swygert v. City of Chicago*, 94 C 7032; *Santiago v. Marquez*, 97 C. 2775; *Stephen Banks v. City of Chicago*, 95 C

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny entry of Defendants' proposed protective order and enter Plaintiff's proposed protective order, which he will submit, pursuant to this Court's standing order, *via* electronic mail to: Proposed_Order_Bucklo@ilnd.uscourts.gov.

Respectfully submitted,

**RONALD KITCHEN**

By: /s/ Ben H. Elson
         One of His Attorneys

G. Flint Taylor
Ben H. Elson
Joey L. Mogul
Sarah Gelsomino
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
(773) 235-0070

Locke E. Bowman
Alexa Van Brunt
Roderick MacArthur Justice Center
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844; (312) 503-1272 (Fax)

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-8576; (312) 503-8977 (Fax)

---

3411; *Ridley v. City of Chicago*, 96 C 688; *People v. Patterson*, 86-6091.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused the foregoing document to be served upon all counsel who have filed appearances in this case via the court's CM/ECF system on June 6, 2011.

/s/ Ben H. Elson